# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3812

_____

Harold G. Wilson; Robert N.         *
Goodwin; Calvin Smith; James R.    *
Brinker; Jerry Thrasher; John B.     *
Hawley; Gary L. Vails; Dale L.      *
Franklin; David L. Jones,          *
                                       *
           Appellants,           *
                                       *
       v.                           *
                                       *
Moog Automotive, Inc. Pension Plan  *
and Trust for U.A.W. Employees;    *   Appeal from the United States
Cooper Industries, also known as Moog  *   District Court for the
Automotive Inc. Group Life & Weekly  *   Eastern District of Missouri.
Disability Plan, Inc. Insured &      *
Self-Funded Comprehensive Health   *
Care Plan; Cooper Industries, Inc.,    *
Trusteed Comprehensive Health Care  *
Plan; Moog Automotive, Inc.        *
Prescription Drug Plan, also known as  *
Health Benefits Program for Retirees   *
of Moog Automotive Inc., Inc., Blue   *
Cross Blue Shield Plan; Cooper      *
Industries, Inc.,                  *
                                       *
           Appellees.           *

_____

Submitted:  June 16, 1999
Filed:  October 8, 1999

_____

Before BOWMAN and HEANEY, Circuit Judges, and LONGSTAFF,[1] District Judge.
_____

BOWMAN, Circuit Judge.

Nine former employees of Moog Automotive Division, Cooper Industries, Inc. (the Company), appeal from the judgment of the District Court[2] entered in favor of the Company and the other named defendants after a trial on the plaintiffs' claims alleging various violations of ERISA.[3]  We affirm.

I.

The nine plaintiffs were all employees at the Company's Wellston, Missouri, manufacturing plant.  In November 1993, the Company announced the imminent closure of the plant and then began negotiating a closing agreement with UAW Local 282 (the Union), the bargaining unit for the plant employees.  During negotiations, the Union sought to extend early retirement benefits to certain employees who would not otherwise be eligible for such benefits when the plant closed.  The Company did not agree to expand eligibility as broadly as the Union proposed, but benefits were extended to a group of individuals who were close to eligibility for early retirement under the Pension Plan then in effect.  The negotiated Closing Agreement, covering a variety of topics relating to the closure of the plant, was ratified by the Union

---

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa, sitting by designation.

[2]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

[3]Employee Retirement Income Security Act of 1974, Pub. L. No. 93-406, 88 Stat. 829 (codified as amended at 29 U.S.C. §§ 1001-1461 (1994 & Supp. III 1997) and in scattered section of the United States Code).

membership and executed by the Union on January 29, 1994. The plant was shut down later that year.

Paragraph 7(b) of the Closing Agreement proposed to "bridge" employees in three categories (two of which are not relevant to the case before us) to early retirement eligibility. In pertinent part, ¶ 7(b) provides:

> An employee who, as of the date of this Agreement, is either age 55 or has completed at least 25 years of service and who, except for the plant closing, would have satisfied the Rule of 80 under the Pension Plan on or before December 31, 1994, will be deemed to have satisfied the Rule of 80.

The Rule of 80 in the original Pension Plan, to which ¶ 7(b) refers, reads as follows:

> A Participant who has attained age 55, but not age 60, and the sum of his age and Accrued Service equals or exceeds 80 may elect an Early Retirement Date, which shall be the last day of the calendar month in which his employment is terminated.

Moog Automotive, Inc. Pension Plan and Trust for U.A.W. Employees (Thirteenth Amendment) § 5.2(b). Simply put, under the terms of ¶ 7(b) of the Closing Agreement and the Pension Plan's Rule of 80 to which ¶ 7(b) refers, early retirement eligibility was accelerated for those plant employees who were not going to qualify for benefits under the original Pension Plan at the time they were terminated, but who would have qualified by the end of the year but for the plant shutdown. Notwithstanding the disjunctive phrasing in ¶ 7(b), that an employee **either** be age fifty-five **or** have twenty-five years of service on January 29, 1994 (the date of the Closing Agreement), an employee had to be fifty-five years of age no later than December 31, 1994, to meet the other requirement of ¶ 7(b), that is, to satisfy the Rule of 80 by the last day of 1994. None of the plaintiffs was at least age fifty-five on December 31, 1994, but they all had

at least twenty-five years of service on January 29, 1994, and at least eighty "points" when their respective ages and years of accrued service as of December 31, 1994, were added together.

There was no evidence at trial that any of the plaintiffs were told by Union or Company officials, either before or after ratification of the Closing Agreement, that they would be eligible for early retirement under the Closing Agreement. Although some of the plaintiffs asked if they were eligible, the uncontroverted evidence demonstrates that these plaintiffs were specifically told they would not qualify for early retirement benefits under the terms of the Closing Agreement. After these verbal denials of eligibility, counsel for the plaintiffs wrote to the Company in October 1994 contending that the denial of benefits "is contrary to the terms of the Closing Agreement and constitutes a breach of the Closing Agreement" by the Company. Letter from Robert J. Guinness to Gene Brunk of Oct. 7, 1994. Counsel relied solely on the terms of the Closing Agreement to support his clients' claims of eligibility. The Company responded that counsel's clients should make formal application for benefits and that their claims would be considered. On December 22, 1994, the clients filed applications for early retirement benefits.

In the meantime, on December 1, 1994, § 5.2 of the Pension Plan was modified to add this subsection (d) "at the end thereof":

> A Participant who is at least age 55 or who has completed at least 25 years of Accrued Service on December 21, 1993 and whose age and Accrued Service, except for the closing of the Wellston plant, would have equalled at least 80 on or before December 31, 1994, shall be eligible to elect an Early Retirement Date on or after the last day of the calendar month in which his employment is terminated.

Sixteenth Amendment to the Moog Automotive, Inc. Pension Plan and Trust for UAW Employees ¶ 2. Nothing in the Sixteenth Amendment modifies or amends § 5.2(b), the

Rule of 80 in the original Pension Plan; instead, new subsection (d) incorrectly restates ¶ 7(b) of the Closing Agreement by misstating the Pension Plan's Rule of 80. Thus, even though the Sixteenth Amendment purports "to reflect the provisions of the Closing Agreement entered into on January 29, 1994, with Local No. 282," it does nothing of the kind. On its face, the Amendment appears to extend early retirement eligibility to the plaintiffs here.

By May 1995, having not heard whether the plaintiffs' applications for early retirement benefits were approved or denied, counsel wrote to the Company to say he was assuming benefits had been denied and he was administratively appealing that decision. For the first time, he based the plaintiffs' claims for eligibility on the Sixteenth Amendment. Realizing there was a serious drafting error in the Amendment, the Company attempted to remedy the mistake in November 1995 by retroactively amending new subsection (d) of § 5.2 of the Pension Plan with the Seventeenth Amendment,[4] "to clarify the intention of the Company and the Union with respect to eligibility for certain early retirement benefits under [the] Closing Agreement":

> A Participant (i) who is at least age 55 on December 21, 1993 or who has completed at least 25 years of Accrued Service on December 21, 1993 and (ii) whose age (which must be at least 55 but not 60 as of December 31, 1994) and Accrued Service would have equalled at least the sum of 80 on or before December 31, 1994, if the Wellston plant had not closed, shall be eligible to elect an Early Retirement Date on or after the last day of the calendar month in which his employment is terminated.

---

[4]The Sixteenth Amendment also misrepresented a negotiated agreement between the Union and the Company regarding a supplemental retirement allowance. That error was corrected by the Twentieth Amendment. Because we hold that the plaintiffs are not eligible for early retirement, they are foreclosed from receiving any supplemental retirement benefit. We will not discuss that issue further.

The administrative appeals were denied in July 1995 and the plaintiffs consequently filed suit against the Company, the Pension Plan, and several of the Company's welfare plans (early retirement eligibility also would have made the plaintiffs eligible for benefits under certain welfare plans). In their complaint, the plaintiffs (1) maintained that they were wrongly denied early retirement benefits under the Pension Plan, as modified by the Sixteenth Amendment; (2) claimed damages for supposed violations of fiduciary duties; and (3) sought statutory damages for alleged failure to provide ERISA plan documents. The District Court heard evidence in a two-day bench trial in November 1997 and in September 1998 entered judgment for the Company on all of the plaintiffs' claims. The plaintiffs appeal the denial of early retirement benefits and the court's refusal to award statutory damages for failure to provide plan documents.

In its findings of fact and conclusions of law, the District Court determined that the Closing Agreement, a collectively bargained and properly executed agreement, is a plan document and should be consulted, along with the Pension Plan itself (including the Sixteenth and Seventeenth Amendments), when deciding whether the plaintiffs are eligible for benefits. When the court then considered the controlling plan documents, it was clear that a mistake had been made in drafting the Sixteenth Amendment. The court concluded that the amendment should be reformed to reflect the intent of the parties as set forth in the Closing Agreement, and thus agreed that the plaintiffs' claims for benefits were properly denied.[5] We review the District Court's findings of fact for clear error and its conclusions of law de novo.

The plaintiffs contend that the District Court erred in concluding that the Closing Agreement should be consulted when evaluating their claims for benefits. It is true, as

---

[5]The District Court articulated several other reasons for holding that the plaintiffs were ineligible for early retirement. We express no opinion on the court's rationale except as discussed here.

plaintiffs note, that a pension plan governed by ERISA "shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1) (1994). But we conclude in this case that it is not true, as the plaintiffs urge, that the written instrument ERISA requires is the Pension Plan alone and that no other documents may be considered by the plan administrator.

The "written instrument" requirement is intended to ensure that participants are on notice of the benefits to which they are entitled and their own obligations under the plan. See Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 83 (1995); United Paperworkers Int'l Union v. Jefferson Smurfit Corp., 961 F.2d 1384, 1386 (8th Cir. 1992). In addition, a written instrument provides guidelines, that likewise are known to the participants, for the plan administrator as he makes coverage decisions. As we explain below, these purposes are not thwarted by counting the Closing Agreement among the plan documents to be consulted in administering the Company's Pension Plan.

The Closing Agreement is itself a written instrument, a collectively bargained agreement "reduced to writing and incorporated, in some fashion, into the formal written ERISA plan provided to employees." Jefferson Smurfit, 961 F.2d at 1386; see Richardson v. Pension Plan of Bethlehem Steel Corp., 112 F.3d 982, 983 (9th Cir. 1997) (noting that a "collectively bargained [pension] agreement [is] governed by ERISA," and that a "different document, the Pension Plan, . . . implements the terms of the Agreement"); International Union of Electronic, Electric, Salaried, Mach. & Furniture Workers v. Murata Erie N. Am. Inc., 980 F.2d 889, 894 (3d Cir. 1992) (construing collective bargaining agreement as "part of the Plan documents under ERISA"); cf. 29 U.S.C. § 1024(b)(4) (Supp. III 1997) (requiring plan administrator, upon written request of participant, to "furnish a copy of the latest updated summary[] plan description, and the latest annual report, any terminal report, **the bargaining agreement**, trust agreement, contract, or other instruments under which the plan is established or operated") (emphasis added and footnote omitted). The Sixteenth

Amendment to the Pension Plan explicitly refers to, and attempts to incorporate, the Closing Agreement, noting that the amendment is intended "to reflect the provisions of the Closing Agreement," and ¶ 7(b) of the Closing Agreement for its part specifically directs the reader to the Pension Plan for the definition of the Rule of 80. Cf. Jefferson Smurfit, 961 F.2d at 1386 (declining to enforce oral collective bargaining agreement where "there was no reference at all in the plan to the collective bargaining agreement" and "no reference in the written collective bargaining agreement" to the benefits sought). Moreover, everyone involved – the plaintiffs, Union officials, the Company, and the plan administrator – knew, and relied upon, the terms of ¶ 7(b) from the time the Closing Agreement was ratified through its implementation. Those who were newly eligible for early retirement under the Closing Agreement qualified for and began receiving benefits as soon as their employment terminated, well before the Sixteenth Amendment added subsection (d) to § 5.2 of the Pension Plan. In awarding these benefits, the plan administrator adhered to the terms of ¶ 7(b) of the Closing Agreement, not the terms of the original Pension Plan. This action comported with past practice at the Company: referring to the terms of newly negotiated collective bargaining agreements and awarding benefits under those writings before the Pension Plan document was formally amended. On the facts of this case, we conclude that the Closing Agreement is a plan document relevant to the plan administrator's decision whether to award early retirement benefits to the plaintiffs. As such it cannot be ignored.

After considering the controlling plan documents that bear on the issue here, it is immediately apparent that taken together the writings create an ambiguity concerning employee eligibility for early retirement. The Sixteenth Amendment to the Pension Plan says one thing; ¶ 7(b) of the Closing Agreement and the Seventeenth Amendment say something else. The different provisions cannot be reconciled. In this situation, we apply the law of trusts and will consider extrinsic evidence in the record relating to the intent of the parties and the circumstances surrounding the modification of the original Pension Plan in order to decide whether it is ¶ 7(b) of the Closing Agreement

or the Sixteenth Amendment that controls the plaintiffs' eligibility for early retirement.[6] See Jensen v. Sipco, Inc., 38 F.3d 945, 950 (8th Cir. 1994), cert. denied, 514 U.S. 1050 (1995).

It is worth noting that ¶ 7(b) of the Closing Agreement resulted from negotiations between the Union and the Company that were taking place under the cloud of the impending closure of the Wellston plant and the consequent loss of all plant jobs. See John Morrell & Co. v. United Food & Commercial Workers Int'l Union, 37 F.3d 1302, 1304 (8th Cir. 1994) (reviewing bargaining history before deciding claim for benefits because "it is usually unwise to construe collective bargaining agreements without regard to their bargaining history"), cert. denied, 515 U.S. 1105 (1995). During negotiations Union representatives sought to extend early retirement benefits to those employees who were in a situation similar to that of the plaintiffs; they were not successful. When all was said and done, and the agreement was ratified, neither Union representatives nor Company representatives believed that the plaintiffs were to be bridged to early retirement eligibility under the terms of ¶ 7(b). As for the Sixteenth Amendment, it was drafted by outside counsel hired by Cooper Industries. The attorney who drafted the amendment was not present at the plant closing negotiations and she had not worked with Moog's Pension Plan in the past. (Moog Automotive was acquired by Cooper Industries in 1992.) The Company officials who signed off on the amendment admitted that they did not read it carefully before approving it.[7] As a result, the Sixteenth Amendment misstates the intent of the parties as expressed in ¶ 7(b) of the Closing Agreement, notwithstanding the amendment's declaration that it reflects the provisions of the Closing Agreement.

---

[6]We need not and do not decide whether the Seventeenth Amendment retroactively modified § 5.2(d) of the Pension Plan.

[7]It is not our intent to suggest that this lack of attention by the Company and its counsel is excusable, but it does explain how the Plan was amended in a way that so obviously fails to reflect the intent of the parties to the Closing Agreement.

None of the plaintiffs relied on the Sixteenth Amendment in deciding to terminate his employment or "elect" early retirement, or in making any other employment decision. The plaintiffs' employment with the Company was ending with the shutdown of the Wellston plant irrespective of their eligibility for early retirement. They knew nothing of the Sixteenth Amendment when they first sought to be found eligible for early retirement; the amendment had yet to be drafted. When the Union ratified the Closing Agreement in January 1994, and even later in the year when the Wellston plant closed, it was plain from the terms of the Closing Agreement that the plaintiffs were not entitled to early retirement benefits – and there was no Sixteenth Amendment to say otherwise.

The plaintiffs are seeking to receive benefits to which they were not entitled under any document or agreement existent when the Wellston plant was shut down. In short, the plaintiffs had no reasonable expectation when they were terminated that they would be eligible for early retirement. Determining early retirement eligibility according to the terms of the Closing Agreement does not interfere with otherwise vested benefits, while determining eligibility according to the terms of the Sixteenth Amendment would give an entitlement to the plaintiffs that was never intended by either the Company or the bargaining unit that represented the plaintiffs' interests. In these circumstances, the Pension Plan, specifically the Sixteenth Amendment, must be reformed "to reflect the provisions of the Closing Agreement." We therefore hold that the District Court properly affirmed the plan administrator's denial of early retirement benefits to the plaintiffs.

The plaintiffs also appeal from the District Court's decision not to award statutory damages for the Company's alleged failure to provide plan documents to the plaintiffs. If within thirty days a plan administrator "fails or refuses to comply with a request" from a participant for information that the administrator is required by ERISA to furnish, the court has discretion to award the participant statutory damages of up to $100 per day for each day of violation. 29 U.S.C. § 1132(c)(1)(B) (1994) (subsection

in effect at time of alleged violations). We review the decision to deny statutory damages for an abuse of the court's discretion.

The District Court found that the plaintiffs' first request for documents was not in writing, as required by ERISA, and that the first written request was not made to the proper person. Further, the court determined that ERISA did not require the plan administrator to furnish certain documents, such as welfare plan documents, when the plaintiffs requested them and that the plan administrator timely provided the Pension Plan documents when the plaintiffs made the request according to the procedures set forth in ERISA. In any event, the court noted, even assuming some documents were not furnished within the thirty-day window, they were produced in a reasonable time. Because the plaintiffs were in no way prejudiced and there was no bad faith on the part of the plan administrator, the court refused to award statutory damages. We hold that the District Court's findings of fact are not clearly erroneous and that the court properly exercised its discretion in declining to penalize the Company in these circumstances.

The judgment of the District Court is affirmed in all respects.

HEANEY, Circuit Judge, concurring.

I concur in the result reached by the majority because I am convinced that, in fact, the company lawyer who drafted the Sixteenth Amendment made a scrivener's error. I would be remiss, however, if I did not point out that this opinion will open the door to claims by both employees and employers that a mistake was made in the drafting of agreements that are covered by ERISA. In this case, there does not seem to be a problem with correcting the lawyer's error because the union representatives apparently agree that a mistake was made. This will not always be the case when a drafting error is made and becomes part of a written agreement covered by ERISA. Now, as I understand the opinion, the court will be able to look behind the written

agreement to attempt to find the true intent of the parties. This may raise serious problems in the future.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.