# United States Court of Appeals
## For the First Circuit

No. 02-1960
No. 03-1277
No. 03-1278

KAREN FENTON; JEANNE RANDOLPH; KATHLEEN WAGNER,

Plaintiffs,

_____

EILEEN CHEEVER; ANTHONY COSTANZO; MARY ANN DIEBOLD;
ROSEMARY GIBSON; EDITH NEIL; MARILYN NUSS; SUSAN OIKELMUS,

Plaintiffs-Appellees/Cross Appellants,

v.

JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, as the
Administrator of the John Hancock Mutual Life Insurance
Company Pension Plan,

Defendant-Appellant/Cross Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U. S. District Judge]

Before

Torruella, Circuit Judge,
John R. Gibson,* Senior Circuit Judge,
and Lipez, Circuit Judge.

_____

*Hon. John R. Gibson, of the Eighth Circuit, sitting by
designation.

Robert S. Frank, Jr., with whom Michelle L. Dineen Jerrett, Choate, Hall & Stewart, and Stephen H. Goldberg, Kristin A. Shepard, Jorden Burt LLP, were on brief, for defendant-appellant/cross appellee.

Jeffrey B. Renton, with whom Robert J. Gilbert, Gilbert & Renton LLC, was on brief, for plaintiffs-appellees/cross-appellants.

--------------------

March 10, 2005

--------------------

**JOHN R. GIBSON**, <u>**Senior Circuit Judge**</u>. The district court granted summary judgment in favor of the seven former employees in this action against their former employer, John Hancock Mutual Life Insurance Company. The complaint seeks enhanced early retirement benefits under the company's pension plan. The question at issue is whether a 1994 amendment to the plan, making early retirement with full benefits available at age 56 to those with 25 years of service, applies to former employees whose jobs ended before they retired, or only to those who are still employed when they retire. John Hancock appeals, and the former employees cross-appeal the district court's calculation of attorney's fees. We reverse and remand for further proceedings consistent with this opinion.

## FACTS

John Hancock terminated the employment of the seven plaintiffs in March 1997 as a result of John Hancock's sale of part of its business to UNICARE of California, Inc. Despite their termination, the former employees remained vested participants in John Hancock's ERISA-qualified pension plan.

The company established the John Hancock Mutual Life Insurance Company Pension Plan in 1938. The Plan has been amended a number of times since it was established, and these amendments have periodically been incorporated in restatements of the Plan. The 1995 Restatement is at issue in this case; it was preceded by a 1976 Restatement. The Internal Revenue Service issued a

favorable determination letter for the 1995 Restatement, meaning that the form of the Plan document complies with the Internal Revenue Code requirements for qualified plans.

The parties agree that the Plan was amended on October 11, 1994. Hancock asserts that this amendment was among those included in the Plan's 1995 Restatement, but the former employees refer to the 1995 Restatement as the "Partial Plan" and assert that it is non-integrated and therefore the 1994 amendment must be considered in addition to the 1995 Restatement. The 1994 amendment lowered from 55 to 50 the age at which a qualifying Plan participant could elect early retirement at reduced benefits. Employees who were at least 56 years old with 25 years of service became eligible for full retirement benefits. Before the amendment, employees were subject to a rule of 85, which allowed full retirement benefits to those with combined age and years of service equaling at least 85. Under the 1994 amendment, eligible participants who choose to retire between the ages of 50 and 56 have their benefits calculated using a formula that subtracts 0.4% of a participant's full retirement benefit for each month that precedes the participant's fifty-sixth birthday.

The Plan also had a special provision for participants whose service with Hancock had been terminated other than by retirement. Such participants had to choose between a full pension at age 65, or a reduced pension beginning whenever they became

eligible for early retirement (e.g., with 15 years of service, at age 50). That reduced pension would be calculated according to the 0.4%-per-month formula with a baseline of age 65.

The former employees, with one exception, fall into a narrow category of Plan participants who had accrued more than 25 years of service with John Hancock but had not reached 50 years of age at the time of their termination.[1] They claimed full retirement benefits starting at age 56,[2] believing that the liberalization of the retirement age in the 1994 amendment applied to them. John Hancock, acting in its capacity as Plan Administrator, denied these former employees full retirement benefits at age 56. Because these individuals' employment with John Hancock had been terminated before retiring, Hancock concluded that they were not eligible for those benefits. John Hancock interpreted the Plan to preclude this category of participants from obtaining full pension benefits at age 56. Instead, John Hancock deemed former employees who left the company prior to age 50 ineligible for full pension benefits until age 65 even if they had accrued 25 years of service. Under this reading of the Plan, the

---

[1]One former employee, Mary Ann Diebold, had slightly less than 25 years of service at the time of her termination but would have qualified as having 25 years under a severance offer from John Hancock.

[2]Former employee Susan Oikelmus elected to begin receiving early retirement benefits at age 53 and asserted that her benefits would be calculated using a full retirement age of 56.

former employees were "early retirees" whose pensions were reduced by 0.4% for each month between the age at which they applied for retirement and age 65. Although the former employees could elect to begin receiving reduced benefits as of age 50, those benefits would be calculated using the normal retirement age of 65.

The former employees filed a three-count complaint to obtain the pension benefits described in the 1994 Plan amendment. The first count is a traditional benefits claim in which the former employees seek a declaration of their rights under the Plan pursuant to ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). In the second count, the former employees allege John Hancock breached its fiduciary duty under ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3). The third count, which asserts relief under the federal common law theory of estoppel, is asserted only on behalf of former employee Diebold. The former employees moved for summary judgment on Count I of their amended complaint while John Hancock sought summary judgment on all three counts. The district court granted the former employees' motion, denied John Hancock's motion on Count I, declared moot John Hancock's motion on Counts II and III, and awarded attorney's fees and costs to the former employees in the amount of $301,324.24. John Hancock appeals the summary judgment order and the award of fees and costs, and the former employees cross-appeal the award of attorney's fees with respect to the rate at which they were calculated.

## I. STANDARD OF REVIEW, BY COURT OF APPEALS, OF DISTRICT COURT'S DECISION

We begin by determining the proper standard of review. The district court's grant of summary judgment is, of course, reviewed de novo, with all inferences resolved in favor of John Hancock. See Rodriquez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 583 (1st Cir. 1993). Summary judgment is appropriate only if there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Id.

The ERISA statute directs the district court to confine its analysis to the terms of the plan. ERISA authorizes a participant to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (emphasis added). The identity of the plan is thus a material fact, and we must determine whether a genuine issue exists as to that identity.

## II. IDENTIFYING THE PLAN

Underlying the dispute is a disagreement about which documents constitute the Plan. John Hancock urges that the Plan consists only of the undated version of "The John Hancock Mutual Life Insurance Company Pension Plan" which the former employees attached to their amended complaint as an exhibit. We will refer to this as "the 1995 Restatement," as John Hancock admits it was a

-7-

true and correct copy of the Pension Plan as of January 1 of that year. John Hancock contends it is the operative Plan document, and that it alone governs the former employees' rights as asserted in Count I.

The former employees, by contrast, refer to this document as "the Partial Plan" and describe it as a mere non-integrated description of the technical terms of the Plan which must be supplemented in order to present a complete statement of the Plan's terms. The former employees do not present a competing version of an integrated Plan document. Rather, they assert that a number of items must be considered along with the 1995 Restatement. They refer to the 1994 amendment as the "cornerstone" of their claim, and state that they also "follow the path carved by the District Court" by relying on the 1991 summary plan description and its 1996 update to provide additional terms. The summary plan description is a booklet entitled, "Your Benefits Program: Reflecting Changing Needs,"[3] and the 1996 update is labeled as such. The former employees find additional support for their interpretation of the Plan from documents created around the time of the 1994 Amendment, including a transcript of comments made by Stephen Brown, John

---

[3]The plaintiffs recognize this booklet as the Plan's summary plan description, but argue that it is part of the integrated Plan. The document specifically disclaims inclusion in the official Plan: "This summary describes only the highlights of your company's Pension Plan and does not attempt to cover all details. Full details are provided in the official plan text, which legally governs the operation of the plan."

Hancock's Chairman and CEO, at a company meeting on October 20, 1994, and a letter of the same date from Brown to employees.

In its recitation of undisputed facts, the district court quoted portions of the 1995 Restatement, the 1994 amendment, the 1996 update to the Plan's summary plan description, and various letters, brochures, and other documents distributed by John Hancock to its employees. Likewise, the district court considered these documents in granting summary judgment on Count I, the benefits claim, but it provided no explanation as to their relevance or admissibility.

John Hancock argues that the summary plan description must not be considered in this case unless the former employees prove reliance on or prejudice resulting from their reading of that document. The district court directed the parties to defer briefing the reliance issue until after the court ruled on Count I.

John Hancock's argument is in line with our holdings in Mauser v. Raytheon Co. Pension Plan, 239 F.3d 51 (1st Cir. 2001) and Bachelder v. Comm. Satellite Corp., 837 F.2d 519 (1st Cir. 1988), where we held that "other appropriate equitable relief" may be available under 29 U.S.C. § 1132(a)(3) if the summary plan description violates ERISA's disclosure provision, Mauser, 239 F.3d at 54-55, and the participant demonstrates reasonable or significant reliance on the summary plan description, Bachelder, 837 F.2d at 523. In Mauser, we further held that the availability

-9-

of "other appropriate relief" precludes claims for breach of fiduciary duty and equitable estoppel based on alleged misrepresentations in the summary plan description. 239 F.3d at 57-58. See also Govoni v. Bricklayers, Masons & Plasterers Int'l Union, 732 F.2d 250, 252 (1st Cir. 1984) (Breyer, J.) (To secure relief based on the summary plan description, the plan participant "must show some significant reliance upon, or possible prejudice flowing from, the faulty plan description."). Not all circuits have this requirement. See, e.g., Burstein v. Ret. Account Plan For Employees of Allegheny Health Educ. & Research Found., 334 F.3d 365, 380-81 (3d Cir. 2003) (collecting cases and concluding: "Upon consideration of the 'reliance' issue, we now hold that a plan participant who bases a claim for plan benefits on a conflict between an SPD and plan document need neither plead nor prove reliance on the SPD.").

John Hancock further asserts that the other documents must not be considered with respect to any of the claims. The district court took the plaintiffs' approach, considering the 1995 Restatement, various summary plan descriptions, benefits statements the former employees received from John Hancock, and other unidentified documents attributed to John Hancock's CEO and its Human Resources Department.

John Hancock contends that the 1995 Restatement is the operative version of its pension benefit plan, and the former

employees offer no competing version. We must identify the plan for a number of reasons. First, ERISA requires that a qualified plan be governed by written documents. The statute requires that every qualified employee benefit plan "shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). The purpose of this requirement is to ensure that participants know their rights and obligations under the plan, Wilson v. Moog Auto., Inc. Pension Plan & Trust for UAW Employees, 193 F.3d 1004, 1008 (8th Cir. 1999), and to provide some degree of certainty in the administration of benefits, Feifer v. Prudential Ins. Co. of America, 306 F.3d 1202, 1208 (2d Cir. 2002). Second, ERISA requires that the plan's administrator must act "in accordance with the documents and instruments governing the plan," 29 U.S.C. § 1104(a)(1)(D). A court cannot determine whether an administrator reasonably interpreted a plan without knowing what documents and instruments set forth the terms of the plan.

The 1995 Restatement constitutes the governing Plan document in this case. As John Hancock points out, it is the restated version of the Plan that includes all of the amendments through January 1 of that year. The 1994 amendment has been integrated into the 1995 Restatement and is not a document to be separately considered. The 1995 Restatement is a comprehensive recitation of the terms of the Plan that, standing alone, informs participants of their rights and obligations. See Pegram v.

-11-

<u>Herdrich</u>, 530 U.S. 211, 223 (2000) ("Rules governing collection of premiums, definition of benefits, submission of claims, and resolution of disagreements over entitlement to services are the sorts of provisions that constitute a plan."). The former employees offer no competing version of the governing Plan document and point to no ambiguous language in the 1995 Restatement. Thus, there is no genuine issue as to the identity of the plan. Our task, therefore, is to determine whether John Hancock abused its discretion in denying liberalized retirement benefits to the former employees under the terms of the 1995 Restatement. With the governing plan document identified, extraneous documents are irrelevant to our determination of the former employees' right to relief under Count I. <u>Bellino</u> v. <u>Schlumberger Techs., Inc.</u>, 944 F.2d 26, 32 (1st Cir. 1991) ("Basic contract and trust principles preclude federal courts from considering extrinsic evidence where the ERISA terms in question are unambiguous."). <u>See also</u> <u>Liston</u> v. <u>UNUM Corp. Officer Severance Plan</u>, 330 F.3d 19, 25 (1st Cir. 2003) ("Liston's suit is for benefits that Liston says were promised to her by the plan, . . . so the central issue must always be what the plan promised to Liston and whether the plan delivered."); <u>Harris</u> v. <u>Harvard Pilgrim Health Care, Inc.</u>, 208 F.3d 274, 279 (1st Cir. 2000) ("A *primary* purpose of ERISA is to ensure the integrity and primacy of written plans. . . .") (internal quotation marks omitted); <u>Perry</u> v. <u>New England Bus. Svc., Inc.</u>, 347 F.3d 343, 346

-12-

& n.3 (1st Cir. 2003) (the court gives "the straightforward language in the Plan its natural meaning" and stating that extrinsic evidence -- i.e., "informal communications" -- "cannot alter the clear and unambiguous terms of the Plan"); Helfrick v. Carle Clinic Ass'n P.C., 328 F.3d 915, 917 (7th Cir.) ("Employer-prepared summaries, by contrast [to SPDs], have no footing in ERISA and could not be enforced against the plan without disregarding the boundary between two distinct entities: the plan and the employer."), cert. denied, 540 U.S. 1073 (2003).

### III. STANDARD OF REVIEW FOR THE PLAN ADMINISTRATOR'S INTERPRETATION OF THE 1995 RESTATEMENT

The parties disagree on the appropriate standard of review of the plan administrator's decision to deny benefits. The district court determined that John Hancock acted in an arbitrary and capricious manner by interpreting its pension plan to deny the former employees' requests for early retirement benefits. This is the appropriate standard of review for a benefits claim under section 1132(a)(1)(B) where the plan gives the administrator discretionary authority to construe the plan. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113-15 (1989). The Plan document contains a clear grant of discretionary authority to John Hancock as plan administrator, so we will review John Hancock's interpretation of its Plan under an arbitrary and capricious standard. See Bellino v. Schlumberger Techs., Inc., 944 F.2d 26, 29 (1st Cir. 1991) ("Federal courts review ERISA claims de novo,

-13-

'unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'") (quoting Firestone Tire & Rubber Co., 489 U.S. at 115). The grant of authority is found in Section 11.1 of the 1995 Restatement, which states:

> The Company shall be the named fiduciary and the administrator of the Plan for purposes of ERISA and shall have the authority to control and manage the operation and administration of the Plan. The Company shall have the power to adopt such rules and regulations as it may deem necessary or appropriate for the efficient operation and administration of the Plan . . . . The Company shall interpret the Plan and determine all questions arising under it. Any such determination by the Company shall be binding on all persons affected thereby.

Despite this language, the former employees contend that the arbitrary and capricious standard is inapplicable when, as here, a grant of discretionary authority is not found in the summary plan description. We are unpersuaded. The silence of the summary plan description on the issue of the administrator's discretion does not create a direct conflict with any particular Plan provision and therefore does not warrant de novo review. See Martin v. Blue Cross & Blue Shield of Virginia, Inc., 115 F.3d 1201, 1205 (4th Cir. 1997) ("Vesting the plan administrator with discretion in making coverage decisions simply does not conflict with the SPD's silence on the matter."); Wald v. Southwestern Bell Corp. Customcare Med. Plan, 83 F.3d 1002, 1006 (8th Cir. 1996) (rejecting argument that summary plan description must contain description of the administrator's discretion in order for

-14-

arbitrary and capricious review to apply).

Contrary to the former employees' assertion, we also conclude that John Hancock does not suffer from a conflict of interest warranting less deferential review. We have recognized that the financial self-interest of a plan administrator may warrant arbitrary and capricious review with "more bite." Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998). However, we have restricted this type of review to situations where the plan participant shows that an adverse determination was improperly motivated. Id. The former employees have made no such showing here.

Finally, there is no merit to the former employees' argument that the administrator's interpretation of Plan language is not a "discretionary function" and therefore not entitled to arbitrary and capricious review. In addition to conflicting with the actual language of the 1995 Restatement, which states that John Hancock "shall interpret the Plan," this argument is wholly inconsistent with our repeated recognition that arbitrary and capricious review applies when a plan reserves discretionary authority to its administrator. See, e.g., Kolling v. Am. Power Conversion Corp., 347 F.3d 11, 13 (1st Cir. 2003).

IV.  THE BENEFITS CLAIM

We turn to the substance of the claim in Count I: the Plan entitles the former employees to receive full retirement

-15-

benefits once they reach age 56 or, if they elect to retire between ages 50 and 56, benefits with a reduction calculated only from age 56. John Hancock rejects this interpretation and asserts that the Plan instead entitles each former employee to full pension benefits beginning at age 65 or reduced benefits calculated from the same age.

The 1995 Restatement, like its 1976 predecessor, is organized by Articles. Article III, "Retirement Dates," addresses the timing of retirement from the earliest dates on which a participant may elect to retire to the mandatory retirement age. Article IV, "Amount of Pension," enumerates the amount of pension a participant is entitled to receive. Article VIII, "Benefits on Termination of Service, Death or Return to Employment,"[4] describes benefits available to participants whose employment is terminated other than by retirement.

Because the former employees left John Hancock before they reached the age of 50, their service to the company was terminated "other than by retirement." Their entitlement to benefits, therefore, is determined first by section 8.1 of the Plan:

> If the Service of a Participant who has completed at least five (5) Years of Service is terminated, other than by retirement, such Participant will, subject to Article V, be entitled to receive

---

[4]The title was "Benefits on Termination of Service or Death" in the 1976 version.

(A) a yearly amount of Pension determined in accordance with Section 4.1 commencing on the first day of the month in which he attains age sixty-five (65), or

(B) the Pension described in (A) above subject to a reduction as described in Section 4.3, commencing on the first day of any month on or after the month in which he meets any of the requirements for Early Retirement described in Section 3.2.

Thus, the former employees were not entitled to receive full pensions until they reached the age of 65. The amount of such full pension would be determined by looking to Section 4.1 (contained in Article IV, "Amount of Pension"), which lists formulas that involve years of service and final average salary. If the former employees were to choose early retirement, the amount would be determined by Section 4.3, which contains the 0.4% per month reduction, and the eligibility would be determined by Section 3.2 (contained in Article III, "Retirement Dates"), which allows early retirement at age 50 with 15 years of service.

Although the former employees rely on the 1994 amendment to the Plan, that amendment affected only Sections 3.2, 4.2, and 4.3.[5] It made no changes to Article VIII. Section 8.1 continued to direct that participants whose employment terminated other than by retirement were not eligible for full benefits before age 65.

_____

[5]The 1994 amendment says that it affects Sections 3.2, 4.4(A), and 4.5, but those section numbers correspond to the 1976 Restatement. In terms of the 1995 Restatement, the 1994 amendment's changes reside in Sections 3.2 (which stayed the same), 4.2, and 4.3. Old Sections 4.1 – 4.3 were collapsed into new Section 4.1, old Section 4.4 became new Section 4.2, and old Section 4.5 became new Section 4.3.

The amendment did lower the age at which the former employees could elect early reduced retirement benefits from 55 to 50, as it amended Section 3.2 which is referred to in Section 8.1. It did not change the age at which they could retire with full benefits.

John Hancock's response to the former employees' request for liberalized pension benefits was consistent with this interpretation, and it should not be disturbed.

When plaintiffs do make an argument based solely on the text of the Plan, they fail to offer a coherent or persuasive interpretation. From their scattershot offering, we extract one main contention -- that the sole criterion for determining whether a participant is entitled to a full pension at age 56 (or a reduced pension calculated from age 56) is whether she has achieved 25 years of service. So, for example, plaintiffs say that Section 8.1 applies only to participants with less than 25 years of service. On its own terms, however, Section 8.1 applies simply to a participant "who has completed at least five years of Service" and whose service is "terminated, other than by retirement;" the text says nothing about any upper limit on service, nor can such a limit be read into the test by "harmonizing" it with other sections, as plaintiffs urge. Still, plaintiffs try to argue that full pensions at age 56 must be available to any participant who has at least 25 years of service, regardless of how that service was terminated. Again, this argument avoids Section 8.1's bite only by ignoring its

plain language; moreover, if there were any doubt, the section that plaintiffs invoke for this proposition (Section 4.2) states explicitly that it is "subject to any applicable Section of . . . Article . . . VIII." Plaintiffs' attempts at "harmonizing" the various sections cannot escape this conclusion. We reverse the district court order of summary judgment and remand for entry of summary judgment on Count I in favor of John Hancock.

## V. CONCLUSION

Having concluded that the district court erred in granting summary judgment for the former employees on Count I, we remand. We note that the parties' briefs addressed reliance and prejudice with respect to what evidence is relevant to Count I. The district court appropriately deferred consideration of reliance until after it decided the summary judgment motions as to the first count. On remand, the issue of reliance may be relevant to the former employees' second count claiming breach of fiduciary duty under Mauser v. Raytheon Co. Pension Plan, 239 F.3d 51, 54-58 (1st Cir. 2001). Similarly, the district court will consider whether relief is available to plaintiff Diebold in Count III. Id. at 57-58.

Our holding makes it unnecessary to consider the former employees' cross-appeal regarding the calculation of attorney's fees. We reverse the entry of summary judgment and the award of attorney's fees and remand for further proceedings consistent with

-19-

this opinion.