**Peter McCORMICK, Plaintiff**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant.**

**C.A. No. 06–30032–MAP.**

United States District Court, D. Massachusetts.

Sept. 27, 2007.

history, Pole 16/37 has outlived many of its neighboring structures.

Calvin W. Annino, Jr., Louis S. Moore, Mark E. Draper, Annino, Draper & Moore, P.C., Springfield, MA, for Plaintiff.

Constance M. McGrane, James F. Kavanaugh, Jr., Conn, Kavanaugh, Rosenthal, Peisch & Ford, LLP, Boston, MA, for Defendant.

*MEMORANDUM AND ORDER REGARDING REPORT AND RECOMMENDATION WITH REGARD TO CROSS MOTIONS FOR SUMMARY JUDGMENT* (Dkt. Nos. 14, 18 & 27)

PONSOR, District Judge.

This is an action based upon the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.* The central dispute involves Defendant's application of an offset to Plaintiff's long-term disability benefits.

The parties filed Cross Motions for Summary Judgment, which were referred to Chief Magistrate Judge Kenneth P. Neiman for report and recommendation.

On September 5, 2007, Judge Neiman issued his Report and Recommendation, to the effect that Plaintiff's motion should be allowed and Defendant's motion should be denied. His memorandum reminded the parties that they had ten days from the receipt of the Report and Recommendation to file objections. *See* Report and Recommendation (Dkt. No. 27) at 16 n.7.

No objection to the Report and Recommendation has been filed by either party. Moreover, the court's review of the Recommendation indicates that is it well supported by the facts and the law.

Based upon this, the court, upon *de novo* review, hereby ADOPTS Judge Neiman's Report and Recommendation of September 5, 2007. Defendant's Motion for Summary Judgment (Dkt. No. 14) is hereby DENIED and Plaintiff's Motion for Summary Judgment (Dkt. No. 18) is hereby ALLOWED. The clerk is ordered to enter judgment for Plaintiff. This case may now be closed.

It is So Ordered.

REPORT AND RECOMMENDATION WITH REGARD TO CROSS MOTIONS FOR SUMMARY JUDGMENT (*Document Nos. 14 and 18*)

NEIMAN, United States Chief Magistrate Judge.

Peter McCormick ("Plaintiff")'s dispute with Metropolitan Life Insurance Company ("MetLife") centers on the terms of a long-term disability plan regulated by the Employment Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq.* The issue boils down to MetLife's application of an offset to Plaintiff's long-term disability benefits based on an estimate of Social Security disability benefits MetLife believes he would have received as well had he applied for such benefits in a timely manner. The resolution of this issue, the parties agree, will also determine the calculation of pre-judgment interest.

The parties have submitted the issue for resolution via cross-motions for summary judgment. Those motions, in turn, have been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons which follow, the court will recommend that Plaintiff's motion be allowed and that Defendant's motion be denied.

I. STANDARD OF REVIEW

When ruling on a motion for summary judgment the court must construe the facts in a light most favorable to the non-moving party. *Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir.2003). Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" when the evidence is such that a reasonable factfinder could resolve the point in favor of the nonmoving party, and a fact is "material" when it might affect the outcome of the suit under the applicable law. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir.1994). The nonmoving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir.1994) (discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The mere fact that both parties move for summary judgment does not change the foregoing analysis. *United Paperworkers Int'l Union, Local 14 v. Int'l Paper Co.*, 64 F.3d 28, 32 n. 2 (1st Cir.1995).

II. BACKGROUND

The parties have stipulated to certain facts (Document No. 16) and present yet other background material which does not appear to be in dispute. Taken together, the facts are as follows.

Plaintiff was an employee of McCormick–Allum Co., Inc., which provided disability benefits for eligible individuals under a Long–Term Disability Plan ("the Plan"). MetLife is the claims administrator and provides insurance for such benefits under the Plan.

Three provisions of the Plan—set forth in a Certificate of Insurance attached to the complaint—are at issue here. First, the Plan gives MetLife, as claims administrator, the authority "in its discretion ... to interpret the terms, conditions and provisions of the entire contract." (Plan at page i.) The Plan defines the "entire contract" as including "the Group Policy, Certificate and any Amendments." (*Id.*)

Second, the Plan enables MetLife, under circumstances set forth in the margin, to reduce a claimant's monthly long-term disability benefits.[1] In summary, this pro-

---

1. In a section entitled "Estimating Social Security Benefits," the Plan provides as follows:

vision enables MetLife to reduce such benefits by an estimate of Social Security disability benefits which MetLife believes the claimant would have received had he applied for such benefits in a timely manner unless, prior to the end of a six month period after which the claimant becomes disabled, he (1) provides proof that he applied for Social Security disability benefits, (2) signs a reimbursement agreement, and (3) signs a form authorizing the Social Security Administration to release information to MetLife. (*Id.* at 9–10.) If these conditions are met, the claimant's long-term disability benefits will not be reduced during the first twenty-four months of payments under the Plan, although they will be reduced thereafter. (*Id.*)

Third, in a section entitled "Special Services: Social Security Assistance Program," the Plan provides that, as soon as a claimant applies for long-term disability benefits under the Plan, MetLife will provide him assistance in applying for Social Security disability benefits as well. In pertinent part, the Social Security Assistance Program provides as follows:

> If you become Disabled MetLife provides you with assistance in applying for Social Security disability benefits. Be-

> We reserve the right to reduce your Monthly Benefit by estimating the Social Security disability benefits you may be eligible to receive.
> Your Monthly Benefit will not be reduced by estimated Social Security disability benefits during the first 24 months of Monthly Benefits payments if, prior to the end of the 6 month period following the date you became disabled:
> 1. you provide proof that you have applied for Social Security disability benefits;
> 2. you have signed the Reimbursement Agreement which confirmed that you will repay all Overpayment; and
> 3. you have signed the form authorizing the Social Security Administration to release information on awards directly to us.
> If you have not received approval or final denial of your claim from the Social Securi-

fore outlining the details of this assistance, you should understand why applying for Social Security disability benefits is important.

\* \* \* \*

As soon as you apply for [long-term disability] benefits, MetLife begins assisting you with the Social Security process.

1. Contact Prior to Application for Social Security Disability Benefits

> Before you even apply for Social Security disability benefits. We will help you determine the best time to apply for Social Security disability benefits. A MetLife Case Management Specialist begins assisting you with the application process at that time. The Specialist personally contacts you by phone to explain, in detail, how to apply for Social Security disability benefits and the advantages of doing this. We provide you with a list of items needed by Social Security in order to complete your claim.

1. Assistance Throughout the Application Process

> ty Administration by the end of the 24 month period, we will begin reducing your Monthly Benefit by an estimate of Social Security disability benefits. For purposes of this section, final denial of your claim means that you have received a "Notice of Denial of Benefits" from an Administrative Law Judge.
> In any case, when you do receive approval or final denial of your claim from the Social Security Administration:
> 1. your Monthly Benefit will be adjusted; and
> 2. you must promptly refund to us an amount equal to all Overpayments. If you do not promptly make such a refund to us, we may, at our option, reduce or offset against any future benefits payable to you, including the Minimum Benefit.
> (*Id.* at 9–10.)

MetLife has a dedicated team of Social Security Specialists. These Specialists, many of whom have worked for the Social Security Administration, are also located within our Claim Department. They provide expert assistance upfront and help guide you through the application process.

(*Id.*) As is evident, in addition to explaining "why applying for Social Security benefits is important," the section describes how MetLife assists claimants "upfront" in the approval process, *i.e.*, "[b]efore [they] even apply for Social Security disability benefits."

Plaintiff applied for long-term disability benefits under the Plan on April 20, 2004. On July 16, 2004, MetLife denied Plaintiff's application because he had not provided certain required information. (See Document No. 20, Ex. B.) On August 16, 2004, Plaintiff appealed (*id.*, Ex. C) and on November 10, 2004, Plaintiff's counsel forwarded correspondence to MetLife regarding the denial (*id.*, Ex. D). When Plaintiff's efforts came up short, he commenced the instant lawsuit on February 27, 2006. Only later, *i.e.*, on October 2, 2006, did Plaintiff apply for Social Security disability benefits.

As it turns out, Plaintiff's underlying eligibility for long-term disability benefits under the Plan is no longer in dispute, the parties having informed the court that those benefits were "reinstated" as of September 1, 2006. Accordingly, on October 6, 2006, MetLife issued Plaintiff a retroactive check (dated September 13, 2006) for such benefits covering April 2, 2004, through September 1, 2006.[2]

The amount of Plaintiff's retroactive check, however, was reduced by MetLife's estimate of Social Security disability bene-fits which it believed Plaintiff would have received had he applied for such benefits when he first requested long-term disability benefits under the Plan. The precise calculation of the retroactive check is set out in a letter from MetLife to Plaintiff's counsel dated September 8, 2006. (See Document No. 26, Exhibit to Constance McGrane Affidavit.) The letter makes clear that the offset includes not only an estimate of Plaintiff's Social Security disability benefits but, as well, derivative benefits which MetLife estimated would be received by his dependents.

### III. DISCUSSION

MetLife's motion for summary judgment seeks a declaration that the Social Security offset it estimated and applied to Plaintiff's long-term disability benefits was proper under the Plan. Conversely, Plaintiff seeks a declaration that MetLife's offset was improper. After describing the parties' positions more specifically, the court will analyze their arguments in some detail. In the end, the court believes that Plaintiff has the stronger argument and, therefore, will recommend that his motion for summary judgment be allowed.

### A. *The Parties' Positions*

MetLife asserts that the Plan authorized it to reduce Plaintiff's monthly benefits by an estimate of the Social Security disability benefits he would have received because Plaintiff did not apply for such benefits until October 2, 2006, over two years after April 20, 2004, the date on which Plaintiff claims to have become disabled for purposes of his long-term disability benefits. Pursuant to the Plan, MetLife claims, Plaintiff had to apply for Social Security disability benefits (as well as sign certain authorizations) by October 20, 2004, six months after the claimed onset date of his

---

**2.** Plaintiff was also issued a check on October 6, 2006, for short-term disability benefits un-der the Plan. Those benefits are also not at issue.

disability. Had he done so, MetLife asserts, Plaintiff would have avoided a reduction during the first twenty-four months of eligibility for long-term disability benefits. Finally, MetLife asserts that a deferential standard of review applies, *i.e.,* that its decision to apply the offset to Plaintiff's long-term disability benefits for these first twenty-four months may be overturned by the court only if that decision was "arbitrary and capricious" because, pursuant to the Plan, MetLife has the discretion to interpret its terms, conditions and provisions. *See Terry v. Bayer Corp.,* 145 F.3d 28, 37 (1st Cir.1998) (a deferential arbitrary and capricious standard of judicial review is mandated where there is a clear discretionary grant of authority to plan administrator) (citing *Recupero v. New Eng. Tel. & Tel. Co.,* 118 F.3d 820, 827 (1st Cir.1997)). *See also Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

Plaintiff does not contest MetLife's assertion that the Plan's provision allowing for the offset of long-term disability benefits by other sources of income is authorized by ERISA. *See, e.g., Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981) (offset of pension benefits by workers' compensation benefits does not violate ERISA). In this vein, Plaintiff concedes that the Plan's offset provisions are properly designed, at least in part, to maximize other sources of income available to claimants, such as Social Security disability benefits, and, in turn, to conserve Plan assets. Plaintiff also acknowledges that he did not apply for Social Security disability benefits within six months of the onset of his disability, although he avers that he was unaware of any obligation on his part to do so.

Finally, Plaintiff concedes that a deferential standard of review should be applied. Plaintiff argues, however, that such review, even if deferential, must still be meaningful. *See DeSieno v. American Home Prods.,* 26 F.Supp.2d 209, 215 (D.Mass.1998). Thus, Plaintiff asserts, the court's review must apply common-sense principles of contract interpretation, particularly, as in the case here, when so much turns on the interpretation of the provisions of the Plan itself. *See Smart v. Gillette Co. Long–Term Disability Plan,* 70 F.3d 173, 178 (1st Cir.1995) ("In construing the terms of contracts that are governed by federal common law, we are guided by common-sense canons of contract interpretation.") (citation and internal quotation marks omitted); *Rodriguez–Abreu v. Chase Manhattan Bank, N.A.,* 986 F.2d 580, 585 (1st Cir.1993) ("Both trust and contract principles apply to interpreting ERISA plans.").

In light of these various concessions, it is obvious that the parties have no issue about either the standard of review or the way in which the offset is to be calculated. The dispute, rather, concerns the "Social Security Assistance Program" section of the Plan and the interplay between its terms and the offset provisions. For his part, Plaintiff argues that the offset as applied to him—because he did not apply for Social Security disability benefits in a "timely" fashion—was improper because MetLife failed to abide by its Plan obligations to assist him in applying for such benefits and in assessing the best time to do so. As a result, Plaintiff contends, MetLife forfeited its right to offset the long-term disability benefits under the Plan it finally granted him nearly thirty months after he applied.

For its part, MetLife acknowledges that it did not provide Plaintiff any assistance in applying for Social Security disability benefits, but asserts that the assistance program is totally voluntary and, at best,

does not kick in until a claimant is found eligible for long-term disability benefits under the Plan. In this case, MetLife argues, that eligibility determination did not occur until well after the expiration of the six month period, during which Plaintiff could have applied for Social Security benefits on his own and, thereby, avoid the offset.

## B. *Analysis*

In the court's view, MetLife's reading of the Plan finds no haven even under a deferential standard of review. As Plaintiff argues, MetLife's obligation under the Plan to assist claimants in applying for Social Security disability benefits begins not when it determines that a claimant is "disabled" for purposes of its own long-term disability benefits but, rather, "as soon as" the claimant applies for such benefits. Moreover, as Plaintiff asserts, the Plan makes clear that MetLife must help a claimant "determine the best time to apply for Social Security disability benefits" and that, indeed, MetLife's Case Management Specialist would "personally contact [the claimant] by phone to explain, in detail, how to apply." These provisions could hardly be more plain. *See Rodriguez–Abreu,* 986 F.2d at 586 ("Contract language in an ERISA plan is to be given its plain meaning.")

To be sure, MetLife, via an affidavit of its Social Security Program Manager, Carol Mazurkivich, reads the provisions of the Plan differently. MetLife asserts in the affidavit that "[a]s a general matter, the Social Security Assistance Program becomes available to claimants only after they have been deemed 'Disabled' as defined in the . . . Plan." (Document No. 24 ¶ 7.) "It is only *after* the claimant's [long term disability] benefits have been approved . . . and the claimant deemed 'disabled' under the . . . Plan, the affidavit continues, that the claim is referred to a MetLife Social Security Specialist." (*Id.* ¶ 8 (emphasis added).) "A claimant whose [long term disability] benefits are not approved," the affidavit goes on, "is not eligible for Social Security Assistance and will not be referred to a Social Security Specialist." (*Id.* ¶ 10.) Finally, the affidavit asserts that "[t]he Social Security Assistance Program is voluntary." (*Id.* ¶ 9.)

There is little doubt that, when a plan reserves discretion to an administrator, significant deference is to be accorded not only to decisions which concern whether or not a claimant is disabled, but to the interpretation of a plan's provisions. *See Firestone,* 489 U.S. at 115, 109 S.Ct. 948. Nonetheless, a court may reject as arbitrary and capricious an administrator's interpretation of a plan that varies from the "unambiguously manifested meaning" of plan language. *Recupero,* 118 F.3d at 827. *See also Bellino v. Schlumberger Tech., Inc.,* 944 F.2d 26, 30 (1st Cir.1991) ("where a disputed term is unambiguous, we presume its natural meaning to be conclusive evidence of . . . intent"). That, in the court's opinion, is the situation which presents itself in the case at bar.[3]

---

**3.** The court asked the parties post-argument to address the doctrine of *contra proferentum, i.e.,* construing any ambiguities in the Plan against the drafter. The First Circuit had indicated in the context of a severance pay plan that "the application of the doctrine in ERISA cases generally would be inappropriate," *Allen v. Adage, Inc.,* 967 F.2d 695, 701 n. 6 (1st Cir.1992), but that it would be appro-

priate in the context of insurance contracts, *Hughes v. Boston Mut. Life Ins. Co.,* 26 F.3d 264, 268 (1st Cir.1994). *See also Balestracci v. NSTAR Elec. & Gas Corp.,* 449 F.3d 224, 231 n. 2 (1st Cir.2006) (declining to address doctrine in the context of an early retirement program dental plan in the absence of developed argumentation and because the terms of the plan were not ambiguous). Although the

■■■ There are at least four reasons to reject MetLife's interpretation of the Plan. First, although as MetLife argues, the Plan does not impose upon claimants an obligation to apply for Social Security disability benefits, its assertion that the Social Security Assistance Program is simply a "gratuitous" service flies in the face of the Plan's language. As the initial sentence of the applicable section states, "[i]f you become Disabled MetLife *provides you with assistance* in applying for Social Security disability benefits." (Emphasis added.) That mandate is anything but gratuitous or voluntary.

Second, the court finds no support for MetLife's assertion that its Social Security assistance is only "triggered" when a determination has been made by MetLife that a claimant is "disabled," i.e., when a claimant's long-term disability benefits have been approved. As Plaintiff argues, however, MetLife offers no Plan language which directly supports this interpretation and MetLife's indirect reliance on the definition of "disability" is anything but helpful.[4] This definition neither alters MetLife's obligation to assist claimants in applying for Social Security disability benefits, as set forth in the provisions quoted above, nor countermands MetLife's obligation to assist a claimant in the Social Security approval process "[a]s soon as [the claimant] appl[ies] for Disability benefits," which, given its context, refers to the Plan's own disability benefits programs. (See also *id.* (noting that expert assistance will be provided "upfront").) Thus, MetLife's assistance with the Social Security process is to be provided *while* a claimant's application for long-term disability benefits under the Plan is pending.

MetLife's argument to the contrary, this is not an "incongruous" approach. Granted, as MetLife suggests, if a person is *not* disabled for Plan purposes, his application for Social Security disability benefits may prove futile. *But see Pari–Fasano v. ITT Hartford Life & Accident Ins. Co.,* 230 F.3d 415, 420 (1st Cir.2000) ("The criteria for determining eligibility for Social Security disability benefits are substantively different than the criteria established by many insurance plans.") (citations omitted). *See also Gannon v. Metro. Life Ins. Co.,* 360 F.3d 211, 215 (1st Cir.2004) ("Although the [Social Security Administration]'s determination of a

doctrine, if applied in the instant matter would hardly help MetLife, here too, as in *Balestracci,* the court finds the terms of the plan unambiguous and does not invoke the doctrine.

4.  The Plan defines "Disability" as follows:
    "Disabled" or "Disability" means that, due to sickness, pregnancy (or accidental injury), you are receiving Appropriate Care and Treatment from a Doctor on a continuing basis; and
    1. during your Elimination Period and the next 24 month period, you are unable to earn more than 80% of your Predisability Earnings and Indexed Predisability Earnings at your Own Occupation for any employer in your Local Economy; or
    2. after the 24 month period, you are unable to earn more than 60% of your Indexed

Predisability Earnings from any employer in your Local Economy at any gainful occupation for which you are reasonably qualified taking into account your training, education, experience and Predisability Earnings.
Your loss of earnings must be a direct result of your sickness, pregnancy or accidental injury. Economic factors such as, but not limited to, recession, job obsolescence, paycuts and job-sharing will not be considered in determining whether you meet the loss of earnings test.
For an employee whose occupation requires a license, "loss of license" for any reason does not, in itself, constitute Disability.
(Plan at 6.)

claimant's entitlement to Social Security disability benefits is not binding on disability insurers, it can be relevant to an insurer's determination whether that claimant is eligible for disability benefits.") (citing cases). As indicated, however, MetLife still has an interest in having a claimant promptly apply for Social Security disability benefits because, in the long run, a claimant's eligibility for such benefits better marshals the Plan's own resources.

Interestingly enough, MetLife asserts through its Social Security Program manager's affidavit, that there are exceptions to the general rule that a referral is made to a "Social Security Specialist" only after a claimant has been deemed disabled under the long-term disability plan, namely, "(a) where the claimant is severely impaired (for example, if the claimant is terminally ill) and (b) where the claimant is deemed a 'special needs' claimant." (Document No. 24 ¶ 8.) MetLife then explains as follows:

> A claimant is deemed a special needs claimant when the nature of his physical or mental disability in combination with social circumstances (for example, the absence of access to any sort of assistance either within the family or in the community) makes it difficult, if not impossible, for him to navigate the Social Security application process on his own. In cases of severe impairment or special needs the claim is referred to a Social Security Specialist at the mid-point of the STD [short-term disability] benefit payment period.

(*Id.*) That is all to the good perhaps, but MetLife cites no Plan provision for these exceptions and the court, having reviewed the Plan in detail, has found none. The purported general rule, too, has no basis in Plan language.

Third, MetLife's interpretation of the Plan is undermined by the provision which obligates MetLife, "[b]efore you even apply for Social Security disability benefits," to "help you determine the best time to apply." The obvious import of this requirement is that, under certain circumstances, it may be best for a claimant to delay applying for Social Security benefits. Although the particular circumstances calling for such a delay are not described, the advice with regard to timing a claimant's application for Social Security disability benefits is clearly left, by operation of the Plan, to MetLife's "Case Management Specialist." [5]

Fourth, the Plan contains no time limit within which MetLife must determine a claimant's eligibility for long-term disability benefits. Thus, if accepted, MetLife's interpretation of the Plan that its Social Security Assistance Program is only "triggered" when a claimant is determined "disabled"—could actually delay such assistance well beyond the date by which a claimant's application for Social Security disability benefits must be filed in order to avoid an offset. Such late "assistance"—which, in effect, is the situation in which Plaintiff found himself—could hardly be the object of the Social Security Assistance Program, unless MetLife actually intended that claimants lose the very benefit MetLife claims to offer, *i.e.*, waiver of the offset for the initial period of eligibility.[6]

---

**5.** Although, as described, the parties differ as to MetLife's obligations, they agree that Plaintiff was never contacted by a Case Management Specialist during the relevant time period. Plaintiff argues that such assistance would have been particularly helpful in the

"critical months" after he became disabled in 2004.

**6.** Plaintiff also points out that because he did not apply for Social Security disability benefits until October of 2006, he will only be entitled, if found eligible, for up to twelve

Simply put, MetLIfe cannot wish away its obligations under the Social Security Assistance Program. The Plan, by its own terms, requires MetLife to assist claimants—or at least offer assistance to claimants—in applying for Social Security disability benefits early in its own process of determining eligibility for Plan benefits. MetLife's interpretation to the contrary is not reasonable and, therefore, does not control. *Compare Jestings v. New England Tel. & Tel. Co.*, 757 F.2d 8, 10 (1st Cir.1985) ("we cannot say that Prudential's interpretation of the language is unreasonable in light of the plan's apparent purposes").

 In sum, the court finds that Met-Life has failed to abide by its Plan obligations, the underlying facts to which having been conceded by MetLife, albeit for reasons related to its interpretation of the policy. As a result, the court will recommend that MetLife's motion for summary judgment be denied.

 The question remains. however, whether MetLife's failure justifies summary judgment in Plaintiff's favor, *i.e.*, forfeiture of MetLife's right to offset Plaintiff's long-term disability benefits for the first twenty-four months. In the court's view, the answer to that question is yes: MetLife has forfeited its right to offset Plaintiff's long-term disability payments under the Plan for the first twenty-four months of his eligibility. To hold otherwise would permit MetLife, via a stilted interpretation of Plan language, to

impose on Plaintiff the burdens of one section of the Plan, i.e., the offset provision, while ignoring its own obligations under another section, *i.e.*, the Social Security Assistance Program, as if the two sections were entirely unrelated. Such "balkanization of contracts," the First Circuit has explained, is forbidden by accepted canons of contract construction. *Smart*, 70 F.3d at 179 (citing, *inter alia*, *Restatement (Second) of Contracts*, § 202 cmt. d (1981) (explaining that "[w]here the whole can be read to give significance to each part, that reading is preferred")). *See* 11 *Williston on Contracts* § 32:5 (4th ed. & 2007 update) ("A court will interpret a contract in a manner that gives reasonable meaning to all of its provisions, if possible."). Accordingly, the court will recommend that Plaintiff's motion for summary judgment be allowed.

## IV. CONCLUSION

For the reasons stated, the court recommends that MetLife's motion for summary judgment be DENIED and that Plaintiff's motion for summary judgment be ALLOWED. If this recommendation is adopted, the parties, per their agreement, would be able to calculate the twelve percent pre-judgment interest to be applied to the back benefits awarded Plaintiff.[7]

months of retroactive benefits, *i.e.*, back to October of 2005. Since MetLife does not adjust estimated offsets for those months excluded from a claimant's Social Security retroactive award because of an *"untimely appli-*cation for benefits," (Document No. 24 ¶¶ 15, 16), Plaintiff asserts that he would bear the entire risk of the delayed Social Security application were MetLife's interpretation of the Plan adopted by the court. As a result, Plaintiff continues, MetLife's failure to assist and

advise him in applying for Social Security disability benefits would not only limit his retroactive award, but MetLife's offset calculation would include an estimate of Social Security disability benefits he will never receive.

7. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachu-

setts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn*, 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.